May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner Sunil Prakash. This case presents a single, discrete issue. Whether the offense of soliciting another person to commit a crime of violence is itself a crime of violence under 18 U.S.C. section 16b. Under 18 U.S.C. 16b, a crime of violence includes any offense that is a felony and which by its nature involves a substantial risk that physical force may be used against a person or property in the course of committing the offense. Now Mr. Prakash was convicted of soliciting another individual to assault and rape his wife. Under People v. Wilson, this is a case cited in the Governor's Brief on page 17. The California Supreme Court sets forth the definition of solicitation and when that crime is complete. It says solicitation is defined as an offer or commutation to another to commit a crime with the intent that the crime be committed. Importantly, the Supreme Court of California goes on to say the crime of solicitation is complete once the verbal request is made with the requisite criminal intent. So the issue in this case really is whether there is a substantial risk that physical force may be used in the course of committing this offense. That is in the course of making a verbal invitation to another person to commit a crime. And the answer to that is simply no. I don't think you need to go any further because under the plain language of the statute there has to be a substantial risk that force will be used or may be used in the course of committing a crime, in the course of committing the offense. And here the offense is nothing more than inviting another person to commit a criminal act. A verbal criminal act is true. And it's a crime of violent behavior. The criminal act is being solicited. The solicitation itself is not the type of conduct that inherently involves a substantial risk of force being used in the course of committing that crime. We have a Third Circuit case, don't we? It's very similar that doesn't see it your way. Yeah, that case, you know, let me pull that up. That case, I found it interesting. That case was decided after Leo Cal. And yet it makes absolutely no citation for Leo Cal. It doesn't grapple at all with the holding of Leo Cal. And Leo Cal, the Supreme Court made clear that in determining whether an offense is a crime of violence under Section 16G, you need to focus on whether there is a substantial risk of force being used in the course of committing the offense. Well, I'm not sure that Leo Cal really emphasized the course of committing the offense as in, okay, you've committed a criminal offense. We're going to close our eyes to the future implications of that. Actually, Your Honor, I beg to differ. I mean, you know, what it said is, for example, in footnote 7 of the decision, because they're dealing with drunk driving there. In Leo Cal, the Supreme Court said, the risk that an accident may occur when an individual drives while intoxicated is simply not the same thing as the risk that the individual may use physical force against another in committing a DUI offense. It's focused, the decision is focused on is there a substantial risk that force, physical force may be used in the course of committing the crime. The 28-J letter that we submitted, unfortunately, was late yesterday. I don't have a whole lot of difficulty saying the crime that your client was convicted of was one that entails that risk. In the course of committing the crime? See, that's emphasizing something different. You're trying to say, look, he committed his crime before the force was applied, so that force shouldn't be counted against him. I think that's a different question. I don't think Leo Cal offers you much support for that proposition. I beg to differ. But if you look at the case that we submitted yesterday, the Sixth Circuit decision in Hull. Hull involves possession of a pipe bomb. And holding that that was not a crime of violence, the Sixth Circuit emphasized that in Leo Cal, the Supreme Court emphasized that under 16b, the test is whether or not there's a substantial risk that physical force will be used in the commission of the offense. Everybody agrees that possessing a pipe bomb can be very dangerous to another person, but it's not the kind of offense that involves physical force in the commission of the crime itself. Counsel, how do you deal with our case of United States versus Cox, which involves solicitation for a murder? That was clearly held to be a crime of violence. What's the difference between a solicitation for a murder versus a solicitation for a rape, in the sense of it being a crime of violence? That, Your Honor, Cox involved in all those different statutory tests, there, a crime of violence was defined as a crime which involves conduct that presents a serious potential risk of physical injury to another. Obviously, soliciting somebody to kill your wife or rape your wife, that involves or presents a serious potential risk of physical injury to another. And for purposes of Cox, that was enough to make it a crime of violence. But here, the issue is not whether it presents a serious potential risk of physical injury to another, whether there's a substantial risk that force may be used in the course of committing the offense. But, Counsel, when you look at 18 U.S.C. section 16, subpart B, it does specifically state that it involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. And you think that we just close our eyes to what he was soliciting, because you say that under the State's ruling in Wilson, once he makes a solicitation, whether it even occurs, the crime is done, and that's it. I suggest, Your Honor, that we have to give respect to compliance in the statute. We can't ignore the last five words of section 16. Section 16B, unlike the sentencing guidance, specifically limits the inquiry period. Is there a risk that physical force may be used in the course of committing the crime? Is there any either logic or legislative history that supports the notion that you close your eyes to what happens later? Frankly, I doubt that those words were stuck in to cut things off. I think they were stuck in to extend the time period you consider. In this context, because of the nature of solicitation, it may arguably cut things off. But is there any logic behind that? I haven't seen any legislative history, Your Honor. Obviously, you have to give respect to the plain language in the statute. Obviously, there's a dramatic difference between the language in the sentencing guidance, which is defined in criminal files and language here. You have to give respect to that difference in language. And that difference in language limits the inquiry in this particular situation to whether there's a substantial risk of force being used in the course of committing the offense. And because the offense here is nothing more than a verbal invitation, there's no way that you can conclude that there's a substantial risk of force being used in the course of committing this kind of crime. You don't agree that the crime that's being solicited here is ugly. It's very ugly. But that's not the question. The question legally presented here is, does this crime fit within the framework of Section 16d? Now, unfortunately, the board tried to shoehorn this offense into that definition, and it just doesn't fit. And for that reason, I think we have to overturn the board's decision here and send this back. The board didn't address whether these offenses might constitute criminal policy in 16a. And that's not an issue before the court. So if you reverse on 16d and the case goes back, the board's going to have to grapple with that question and also whether this is an aggravated felony under Section 101A43U of the United States. Thank you, Mr. Joe. Good morning. Good morning, Your Honor. My name is Jesse Fletcher. I'm the Deputy Attorney General of the United States. I'm going to start off. I applaud Mr. Giroir for referencing California state law because it is important that we look there and we look at it first, and when you left out there was the intent that is required. You need to have the intent to commit the underlying offense. In California, it is only violent felonies that are prescribed under the solicitation statute. And that is the difference in this case. That is what makes it a crime of violence. You cannot be convicted for this crime unless you have the present intent to commit the offense. And that creates a risk of physical force will be used against the victim or the intended victim. You have to have the present intent that force be used against the victim? Well, in this case, for example, it was raped by force. Right. So you have to have the present intent to commit rape by force. So that obviously entails that force will be used against the intended victim. Well, the argument Petitioner offers acknowledges that force is down the road, but says that, look, the solicitation offense is done at the time the verbal solicitation is accomplished, and so the force itself doesn't take place when his offense, solicitation, is committed. Right. And that argument is one that the board dealt with. And in trying to explain that for you, let me just say that it is the intent that is really the critical factor. It's not that something may or may not happen. It's just like in the verdict-free context. If someone has walked into a home, maybe someone's home, maybe someone's not. Maybe physical force will be used, maybe it will not. It's that if someone has the intent to commit such a violent felony, and they want to take a step, whether it be an invitation or whether they walk through the door, is there a present risk that physical force is going to be used? And the attorney general's position is that it is. And much like the Third Circuit comment, if you go and you take steps, and you intend that someone's going to come to you across state lines to murder your wife, and you want it to happen, that's the desire of yourself, does that create a substantial risk that physical force will be used? There's no problem with saying it did. And much like, you know, I understand the cost of the sentencing guidelines definition, but I think what the court really focused on, since it stated it was, if you have the present intent to have someone murder your wife, is your wife going to be in harm's way? And that's the attorney general's position in this case, is that, yeah, there's really no difference. Well, and frankly, I don't know that the petitioner really contests the proposition, but I think we still have the same problem. And this is unusual for an immigration case. Usually in an immigration case, the unfairness, the sense of unfairness, falls on the side of the petitioner. But the statute winds up saying what it says. Well, in this case, I mean, all the logic, as best I can see, runs in favor of the government's position. The question becomes, does the wording of the statute thwart the government's position and the sense of fairness here? Because the statute makes reference to, excuse me, the use of physical force in the course of committing the offense. And the problem becomes, what's the offense? If the offense is only solicitation, well, there's actually no force itself exerted during the solicitation. It may be that everybody knows the next day somebody's in big trouble. But is that wording something that thwarts the effort to apply what should be the logic of the statute? And I understand that this is, unfortunately, not an uncommon experience we've given for the honor of an act, is that the wording of the statute somehow leads you, or somehow is disrupted from that logic. But I think when you look at the third-degree case, I think when you look at Leocow as well, Leocow was more of a mens rea problem. Because there, you know, the person was driving under the influence without really mens rea to cause any harm. And I think a lot of the wording of the statute is directed towards focusing the government's position on if you're going to charge someone with committing a crime of violence, they have to intend that harm occurs, intend that violence occurs. You know, counsel, I'm puzzled by that in light of the Wilson case. That seems to make it clear that under California law, the solicitation itself is all we're talking about, so that if the petitioner solicits the rape of his wife, never does anything more about it, never makes the payment or whatever was going to be required to get this to occur, he is still guilty of solicitation of rape. And yet no violence occurred because he didn't make the payment or whatever the case may be. Doesn't the petitioner have some basis in stating that under California law that it's a real stretch to get this to be a crime of violence? Well, if you only focus on the invitation without looking at the intent, then again, I... Well, you talk about the intent, but that's not what Wilson says. I think Wilson makes clear that for California to establish solicitation, for one, they cut it off to only the most egregious crimes. I understand that. And two, they made sure that if you're going to punish someone, the government has to prove beyond reasonable doubt that the defendant had a present intent to commit the underlying offense. And again, if the crime was if we could somehow punish all people who have a present intent to kill their wife, would that create a substantial risk to the force to be used? I would certainly think the Attorney General's position is that it would. Well, California's really speaking to something, a different problem. The question is when has there been a criminal act for California's law purposes? And frankly, we understand the logic of the California Supreme Court in saying, look, you don't have to have the actual violence to commit solicitation. So when they say complete, they're not talking about the door being closed. They're really talking about, look, this is enough to constitute a criminal act. They're facing a different direction. So they're not trying to answer the question that we're trying to answer here. And the question really becomes, okay, when you've accomplished the solicitation or any crime, burglary, whatever it is, when you've done enough to become criminally liable, when does the door close for the acts you consider linked sufficiently? And so I'm not the California decision is important, but it's from a different direction from my sense. Do we have anything that we can look to that helps us with the problem we have here, which is how far down the road should you consider the ripples on the pond in terms of what the effect is, given that the language of the statute here does include some language we have to take into account? No, you really don't. And Third Circuit really doesn't address the issue. But in looking towards it, and again, I know you want guys in the federal legislation. There doesn't appear to be any, but if you look at why California chose to do this, it's because these crimes, when you have the intent, you go and solicit others to join you. It's because you're creating the present risk that, you know what? If we don't prescribe this conduct, harm will occur. And it could occur. And again, I think bringing it back and focusing on it here, I think it is critical, and it's the most important fact that California is not a decision-making unit. You have to want to commit the underlying offense. And that present desire creates a risk that, of course, may be used against the intended victim. And the government's position is that that constitutes a crime of offense. What role, if any, does our Barragan-Lopez case play in the analysis that we must do in this case? I'm familiar with that. Is that a recent decision? 2007. 2007. Lopez. It's Barragan-Lopez v. Mukasey, 508, Fed 3rd 899. In that case, we held that an alien's conviction for solicitation to possess at least four pounds of marijuana constituted a crime of moral turpitude. Now, that's not a crime of violence, but it's the same reasoning that we're dealing with in this case. I think there is, of course, certainly a distinction between looking at whether solicitation is covered in the And here, certainly that conduct would constitute that. I don't know if it has any impact other than drawing on what is plainly a defrayed act. Any time you pretend to commit some ancient crime as one that was intended for the case, certainly it would be a crime of moral turpitude. I think, though, it would not be correct for me to have this Court look to a crime involving moral turpitude and to contact every entity to support an agency in this case to focus on whether it was a crime of violence. So I would stress on this Court to look just simply to there. However, the intent behind it, looking at whether, certainly whether this person's intent, the only guy you should be following, whether this person's intent somehow was more of a defrayment, I don't think that would be much trouble in this case. So I would simply ask the Court to focus on whether it was a crime of violence in this case. Thank you, Mr. Blesk. Mr. Jobe, you get the last word. Very briefly, going back to this Third Circuit case, the whole thing in this case basically summarizes the position of the two different courts in the Court of Unanimous Decision. It says, in pointing a categorical approach here, we are satisfied that the use of handshake counter facilities in the condition of a murder trial by our own poses a substantial risk that a physical force will be used against another. That's true. Undoubtedly, that's true. But it's not enough. Because here the issue isn't simply whether or not there's a substantial risk that a physical force will be used against another. The question is, is there a substantial risk that a physical force will be used in the course of committing a crime? Let me ask you this. Suppose we can interpret the statute the way you urge us to, but we can also interpret it the way the government does and the way the Third Circuit does. Don't we in that situation have to defer to the agency? No, not in this case. This Court has held repeatedly that it doesn't defer to the Board's interpretation of 18 U.S.C. Section 16. The case, Ortega-Mendez v. Gonzalez in 453.301010, that's because it's not just an immigration statute. It's incorporated into the INA as a criminal record. So there's no doubt in the Supreme Court. If there are no other questions. Thank you, Mr. Joe. Mr. Bless, thank you as well. Case just argued as submitted.
judges: Silverman, Clifton, Smith M.